**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-00152-PAB-STV

JOHN DOE,

       Plaintiff,

    v.

UNIVERSITY OF DENVER, et al.

       Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY**

---

## INTRODUCTION

Plaintiff hereby opposes Defendants' motion to exclude the testimony of Plaintiff's experts, Professor Aya Gruber ("Gruber") and Hanna Stotland ("Stotland"). As grounds for this opposition, Plaintiff hereby states as follows:

Defendants' motion should be denied as to Professor Aya Gruber because it is grounded in: an overly narrow view of expert qualification per Federal Rule of Evidence 702 ("FRE 702"); a gross mischaracterization—or intentional misreading—of Gruber's opinions and testimony; and an effort to discredit the entirety of Gruber's opinions by focusing on 4 sentences—read out of context—that appear in the background paragraphs of her report. As set forth below, Gruber more than adequately meets the standards for admissibility defined by FRE 702.

Defendants' motion should likewise be denied as to Hanna Stotland because Defendants erroneously conflate speculative expert testimony with speculative damages, which are not the proper subject of their FRE 702 motion. As set forth below, Stotland is eminently qualified to

opine on the difficulties faced by students with Title IX disciplinary records in continuing their education and, more specifically, the challenges Plaintiff would face when applying to law school.

## ARGUMENT

### I.      Rule 702 of the Federal Rules of Evidence

The proponent of expert testimony has the burden of demonstrating that the testimony is admissible. *Cary v. Automobile Ins. Co. of Hartford*, 838 F. Supp. 2d 1117, 1122 (D. Colo. 2011). Per FRE 702, district courts act as gatekeepers, tasked with determining whether a proffered expert is (i) qualified; (ii) whether her testimony is reliable; and (iii) whether her testimony is relevant to the issues at hand. *U.S. v. Weiss*, No. 05-cr-00179, 2007 WL 9677017 (D. Colo. April 23, 2007). "Rule 702 mandates a liberal standard for the admissibility of expert[s]…the rejection of expert testimony is the *exception rather than the rule.*" *Cary*, 838 F. Supp. 2d at 1122 (emphasis added).

Expert qualification is determined by comparing "the area in which the witness has superior knowledge, skill, experience or education with the subject matter of the witness' testimony." *Weiss*, 2007 WL 9677017 at * 2. FRE 702 does not impose an overly rigorous requirement in this regard. "'[A]s long as an expert stays within the reasonable confines of his subject area'… a lack of specialization does not affect the admissibility of [the expert] opinion but only its weight.'" *Estes Park Taffy Co., LLC v. The Original Taffy Shop*, No. 15-cv-01697, 2017 WL 2472149 at *2 & n. 3 (D. Colo. June 8, 2017) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)).

To determine relevance, a court examines "the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances

the purpose of aiding the trier of fact." *Weiss*, 2007 WL 9677017 at \*2. *See Cary*, 838 F. Supp. 2d at 1122.

Experts are "permitted wide latitude to offer opinions, including those not based on first-hand knowledge or observation," so long as the opinions have a reliable basis. *Estes Park*, 2017 WL 24772149 at \*2. Reliable testimony is "supported by 'appropriate validation—*i.e.* good grounds, based on what is known.'" *Id.* (citation omitted). The party proffering the expert need not prove that the expert is indisputably correct or that the expert's theory is "generally accepted." *Goebel v. The Denver and Rio Grande R.R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003). *See Cary*, 838 F. Supp. 2d at 1122; *Weiss*, 2007 WL 9677017 at \*2.

"No single factor should be dispositive in weighing the reliability of an expert's opinions." *Estes Park*, 2017 WL 24772149 at \*3. "District courts applying *Daubert* have broad discretion to consider a variety of other factors." *Goebel*, 346 F.3d at 992. Generally, the district court should focus on the expert's methodology rather than the conclusions it generates. *Id.* Even if the court believes that there are better grounds for some alternative conclusion, and that there are some flaws in the expert's methods, the testimony should be admitted. *Estes Park*, 2017 WL 24772149 at \*3.

For the reasons set forth below, the Court should deny Defendants' motion in its entirety.

II.   **Gruber's Testimony Should Not Be Precluded**

   A.  **Gruber Is Qualified**

Defendants erroneously argue that Gruber was proffered to testify about "how to conduct a sexual assault disciplinary case on a college campus" and, in that respect, she is not qualified. Moving Br. at 3-6. As was misapprehended by the District Court in *Doe v. Colgate Univ.*, 2017 WL 4990629 (N.D.N.Y. Oct. 31, 2017)—which is currently before the Second Circuit on

appeal—Gruber was *not* proffered to testify as to whether DU followed its procedures in conducting Title IX investigations on campus. Gruber's opinions concern the presence of gender bias in DU's sexual misconduct process. Declaration of Marisa Aya Gruber, dated February 19, 2018 ("Gruber Decl."), Ex. 2, Rpt. at 1. Gruber, an expert on feminism and violence against women, provides helpful background information about the gendered nature of rape law and policy, explains the history of "rape myths," and how gendered and feminist views of rape have impacted Title IX investigations on college campuses. *Id.* at 1-6.

Gruber's report outlines how each step of DU's investigation was skewed in favor of Jane Doe and how the investigators' assumptions about gender and "natural" sex potentially impacted their opinion of John Doe, incorrectly leading them to conclude that the complainant was more credible and causing them to misconstrue the evidence as fitting the OEO Policy definition of coercion. *Id.* at 6-23. Her report further outlines the specific ways in which the DU process was unfair to Plaintiff. *Id.* Gruber identifies bias in DU's process that correlates with gendered, victim-centric views of how to approach sexual assault cases. *Id. See* Gruber Decl. ¶¶ 16-26.

Gruber is qualified to proffer the opinions in her report.[1] She has both academic and practical knowledge of Title IX. She is a legal academic who studies feminist theory and violence against women using the orthodox methods of legal scholarship. Gruber Decl. ¶¶ 4-15. Gruber's legal scholarship is descriptive and normative, and relies on, among other things, cases, statutes, regulations, law reviews, books, sociological studies, and news articles. *Id.* ¶ 15. Her scholarship has been subject to peer review in the field of legal scholarship, through law review

---

[1] Contrary to Defendants' assertions, Gruber's experience is not limited to criminal law. Prior to becoming a professor, Gruber was a federal district court clerk who worked on an exclusively civil docket. Gruber Decl. ¶ 29. She has also taught Torts and Critical Legal Theory. *Id*. Ex. 1.

selection, and tenure and promotion review at three different institutions (Florida International University, University of Iowa, and University of Colorado). *Id.* ¶ 31.

Gruber's recent publications address Title IX processes and investigations, and the substantive definitions of sexual assault in campus codes. *Id.* ¶¶ 4-15, Exs. 6-9. For the past 4 years, her courses have included lectures on Title IX. In Fall 2017, Gruber taught a course at Harvard Law School, *Feminism and Crime Control*, about a quarter of which related to sexual assault issues. *Id.* ¶ 33. Gruber also served on a faculty committee which investigated actions taken against CU-Boulder faculty members accused of sexual harassment and sexual misconduct. *Id.* ¶¶ 35-38. She has met with personnel from CU Boulder's Title IX office to discuss discipline in Title IX cases. *Id.* She has also reviewed scores of university sexual misconduct policies. *Id.* ¶ 15. c. Since 2013, Gruber, has given numerous presentations concerning campus rape and Title IX. *Id.* ¶¶ 47-48.

Gruber writes prolifically on the intersection of feminist legal theory with sexual assault law reform, the definition of consent and the impact of gender politics on the prosecution of sex crimes. Her articles have addressed the development of "Title IX Culture" on college campuses, including how biased assumptions impact sexual misconduct proceedings. *Id.* ¶¶ 12-14. She serves as an adviser to the Model Penal Code sexual assault project. *Id.* ¶ 39. She co-authored a textbook on comparative criminal law, which analyzed investigation and interrogation techniques, and compared inquisitorial versus adversarial models of procedure. *Id.* ¶ 45. Prior to becoming a professor, Gruber served as a public defender. Her job responsibilities included investigating sexual contact and sexual solicitation cases. *Id.* ¶ 30. In that role, Gruber spoke with victims of sexual assault. *Id.*

Gruber does not "lack[] familiarity" with student conduct proceedings, and Defendants'
criticism is contradicted by Gruber's relevant areas of academic study. Moving Br. at 5. Though
Gruber refers to sexual assault law and criminal and civil standards in her report, it is clear that
her analysis of DU's investigation focused on the record evidence and the relevant provisions of
DU's sexual misconduct policy. *Id.*, Ex. 2, Rpt. at 5-22. Gruber further testified at deposition that
the term "due process" is used colloquially to describe unfair university processes, not to suggest
that they are subject to the same standards as criminal proceedings. Declaration of Tara J. Davis,
dated February 19, 2018 ("Davis Decl."), Ex. 1, Gruber Tr. at 55:3-57:12 ("I'm not suggesting
that the procedures for adjudicating guilt in a Title IX case is the same as procedures for
adjudicating guilt in a criminal case.")[2] Title IX adjudication is not a discrete practice and
reference to criminal, civil and constitutional standards is necessary to determine whether the
process afforded to Plaintiff was adequate[3].

Defendants incorrectly suggest that private universities have no obligation to protect the
rights of students accused of sexual misconduct. Moving Br. at 6. However, courts have held that
student disciplinary proceedings at private universities must be conducted with "basic fairness"
and that court-established and evidentiary rules may be referred to "in measuring the adequacy
and fairness of the hearing." *Cloud v. Trustees of Boston Univ.*, 720 F.2d 721, 725 (1st Cir.
1983). *See Doe v. Brandeis U.*, 177 F. Supp. 3d 561, 603 (D. Mass. 2016). The Dear Colleague
Letter ("DCL") also provides that *all* universities receiving federal funding provide an adequate,
reliable and impartial investigation process in sexual misconduct cases. Gruber Decl., Ex. 10,

---

[2] Defendants further criticize Gruber, without relevant citation to her report, as opining that DU
failed to comply with the Federal Rules of Criminal Procedure. Nowhere in Gruber's report are
these Rules referenced. Gruber Decl., Ex. 2.
[3] DU relies on civil liability standards in its sexual misconduct process because it utilizes the
preponderance of the evidence standard. *See* Gruber Decl., Ex. 10, Dear Colleague Letter 10-11.

*DCL*, at 10. Thus, Gruber's opinions as to a lack of basic fairness in DU's investigation, including comparisons to civil, criminal and constitutional standards would be helpful to the jury.

Defendants have adopted an overly narrow view of expert qualification. *See Gardiner v. General Motors Corp.*, 507 F.3d 525, 528 (10th Cir. 1974) (expert should not be required to satisfy an overly narrow test of his own qualifications); *Estes Park*, 2017 WL 2472149 at *2 & n. 3 (lack of specialization does not affect the admissibility of the expert opinion but only its weight.) FRE 702 makes clear that expert qualification need not be based on practical experience. *Estes Park*, 2017 WL 2472149 at *2 & n. 3. If the only experts permitted to testify in a particular case represented one group, here Title IX administrators, then universities sued under Title IX could set their own standards. *See, e.g.*, *Stagl v. Delta Airlines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997) ("If the only experts permitted to testify inevitably represent the same side of a civil case, those who possess these experts can … set their own standards.")

Courts routinely admit expert testimony on gender bias where the opinion is grounded in education rather than experience with the exact policies and procedures at issue. *Int'l Healthcare Exch. v. Global Healthcare Exch.*, 470 F. Supp. 2d 345, 355 (S.D.N.Y. 2007) (admitting testimony of sociologist on state of research concerning gender stereotyping and impact of such stereotyping on Plaintiff's employment); *E.E.O.C. v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 462 (S.D.N.Y. 2004) (admitting testimony of sociologist without first-hand knowledge of practices of defendant corporation, who summarized studies of impact of gender stereotypes on personnel decisions and opined on how the stereotypes may have affected decisions at the defendant corporation); *E.E.O.C. v. Beauty Enters.*, 361 F. Supp. 2d 11, 18-19 (D. Conn. 2005) (admitting testimony from linguist about national origin stigmatization from English only rules,

which was "not based on a formal scientific method" but on linguist's reading of scholarly publications).

### B. Gruber's Opinions Are Not Legal Conclusions

Defendants mischaracterize Gruber's report as improperly drawing legal conclusions. Moving Br. at 6-7. Rule 704 of the Federal Rules of Evidence ("FRE 704") permits experts to opine on the ultimate issues in a case. *Id.* An "opinion that touches on the essential elements of a legal analysis" but does not reach a legal conclusion is admissible. *XY, LLC v. Trans Ova Genetics, LC*, No. 13-cv-0876, 2016 WL 97788, at **3-4 (D. Colo. Jan. 8, 2016). An expert can refer to the law in expressing an opinion, but may not tell the jury what legal standards must guide their verdict. *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, 468 Fed. Appx. 816, 821 (10th Cir. 2012) (affirming district court's admission of expert testimony which discussed legal concepts and drew conclusions concerning the "heart of the dispute"). Experts can properly explain complicated legal concepts, opine on how stereotypes influence decision making and point out areas that may indicate bias. *See Samaha v. Washington State Dep't of Transp.*, 2012 WL 11091843 at *4 (E.D. Wa. Jan. 3, 2012) (expert testimony admissible where it "educates the jury on the concepts of implicit bias and stereotypes" and is relevant to the issue of whether discrimination occurred).

Gruber's report refers to legal concepts which may assist the jury, but draws no legal conclusions. Nowhere in Gruber's report does she conclude that DU violated Title IX by discriminating against John Doe on the basis of his gender—or that discrimination occurred. Gruber Decl., Ex. 2. She does not conclude that DU breached any contracts with John Doe, nor does she opine on the extent to which DU was required to protect Plaintiff's right to due process.

Gruber does not *conclude* that "DU's investigation contributed to the discriminatory outcome" or *opine* that Defendants' failure to conduct "an adequate, reliable, and impartial investigation…led to Plaintiff's alleged discriminatory expulsion." Moving Br. at 6. The excerpts from Gruber's report cited by Defendants do not support their argument. *Id.* at 7. On the contrary, the statements cited concern *facts* that, in Gruber's opinion, *could* indicate the presence of gender bias in DU's investigation. These opinions are not grounded in "guesswork," but Gruber's decades of experience, systematic academic study of relevant issues, and her review of the investigative documents and Defendants' deposition testimony. Gruber Decl., Ex. 2, Rpt. at 2.[4]

Gruber's deposition testimony does not "corroborate" that she is "opining on legal conclusions." Moving Br. at 7-8. Defendants' counsel used legal terminology specific to Plaintiff's claims when examining Gruber. Davis Decl. Ex. 1, Gruber Tr. at 84:5-7, 84:13-17, 85:16-87:11. Gruber testified "I don't know whether we're going in circles about 'erroneous'" (Gruber Tr. 86:3-14), when counsel unsuccessfully attempted to elicit an admission from Gruber that she concluded that there was an "erroneous outcome" under Title IX. Gruber clarified that she: was not drawing conclusions that should be reached by the jury (Gruber Tr. at 88:19-89:18); offered no opinion about whether discrimination occurred (Gruber Tr. at 91:7-94:15); and that

---

[4] Defendants also rely on the erroneous assertion in *Doe v. Colgate*, 2017 WL 4990629 at *11, that Gruber is "unqualified to render an opinion regarding the thoroughness or presence of bias in [the Title IX] investigation." Plaintiff's counsel has appealed this portion of the *Colgate* decision to the Second Circuit on the grounds that it is based on the District Court's overly narrow reading of Rule 702, is in contravention of established Second Circuit law, and ignores Gruber's wealth of relevant education, knowledge and experience. In the Second Circuit, as in the Tenth Circuit, the fact that a proposed expert may not have the exact qualifications to fit the case does not mean the expert's testimony is automatically inadmissible. *See, e.g.*, *Valentin v. City of N.Y.*, No. 94-CV-3911, 1997 WL 33323099 at * 15 (E.D.N.Y. Sept. 9, 1997) (expert with experience in police investigations permitted to offer opinions on Housing Police and E.E.O. investigations). *See also Estes Park*, 2017 WL 2472149 at *2 & n. 3 (lack of specialization does not affect the admissibility of the expert opinion but only its weight).

she believed that the investigators harbored views about men as sexual aggressors and women as passive gatekeepers. (Gruber Tr. 94:24-97:17).

### C.  Gruber's Testimony Will Assist the Jury

In cases where gender discrimination is alleged, expert testimony may be used to explain the existence of gender stereotypes, and how those stereotypes may have impacted decisions, policies and practices relevant to the claims at issue. *See Samaha*, 2012 WL 11091843 at \*4; *Morgan Stanley & Co.*, 324 F. Supp. 2d at 462; *Int'l Healthcare Exch.*, 470 F. Supp. 2d at 355; *Beauty Enters.*, 361 F. Supp. 2d at 18-19.

Here, Gruber's testimony will educate the jury about (i) how an influential set of gendered beliefs regarding sexual assault developed over time, and was inserted into the national consciousness after the DCL, and consequent media coverage of high profiles cases, and (ii) procedural deficiencies in Title IX investigations, including DU's, may or may not indicate that Defendants were influenced by national and local pressure to support female complainants. The jury will then be able to use this information, as well as any record evidence of actual bias, to decide whether DU discriminated against John Doe on the basis of his sex.

Defendants incorrectly assert that Gruber "steps into the jury box" by improperly making credibility assessments. Moving Br. at 9. Yet, she makes no witness credibility determinations at all. Gruber addresses the manner in which DU's *investigators* assessed credibility—an analysis that is relevant to the presence of bias in the investigation. Gruber Decl., Ex. 2, Rpt. at 10-16. Whether or not Gruber's analysis was somehow lacking because she could not assess nonverbal cues is a question that goes to the weight—not the admissibility—of her testimony. To claim that an expert may only opine on techniques used during an investigation if that expert is present to observe nonverbal cues of the witnesses being questioned would require experts to possess time

machines in order to be present for those interviews. It would also lead to the preclusion of all expert testimony which assesses investigative techniques in any context, including Title IX.

### D. Gruber's Testimony Is Reliable

Gruber's opinions are reliable—there are good grounds for her opinions based on the materials she relied upon in compiling her report, and the facts in evidence. *Estes Park*, 2017 WL 247772149 at *2. As Defendants are aware—besides decades of expertise researching and writing about rape law, gender politics and, more recently Title IX—Gruber referred to numerous sources in preparing her expert report, including: foundational texts on rape and rape law reform, articles on rape and history, articles on critical theory and rape, various sociological and literature surveys, the DCL, the 2014 DOE Questions and Answers, recent law review articles about campus sexual assault, articles in the popular media and her ongoing review of university sexual misconduct policies. Davis Decl., Ex. 3; Gruber Decl. ¶¶ 4-15. She has also participated in a number of panels related to Title IX and campus rape issues. Gruber Decl. ¶¶ 47-48.

Defendants' attempt to exclude Gruber's entire report on the ground that, in their opinion, 4 sentences appearing on 2 pages of a 24-page report—and taken out of context—are based on "speculation" should be denied. Moving Br. at 11. When read in context, these statements are supported by record evidence, as well as Gruber's own research. Rpt. at 5-6. Gruber Decl. ¶¶ 4-15; Davis Decl. Ex. 3. Defendants' criticism that Gruber's non-specific "opinion" is unreliable because "it" is not anchored on any standard, regulations, or other university investigations of sexual assaults is inapposite because Title IX investigations differ greatly across college campuses. Moreover, Gruber relied upon sources relevant to Title IX investigations—the DCL, the 2014 Q&A and DU's policies and procedures. Davis Decl. Ex. 3, Gruber Decl. ¶¶ 12-14. She

11

has also reviewed numerous university sexual misconduct policies. Gruber Decl. ¶ 15.c. Regardless, the procedures employed at other universities are irrelevant to whether DU investigated the allegations against John Doe in a manner that reflected gender bias.

### III. Hanna Stotland's Testimony Should Not Be Precluded

#### A. Stotland is Qualified

Stotland's wealth of knowledge and experience undoubtedly suffice to qualify her as an expert educational consultant. In claiming she is not qualified to opine on the impact of Plaintiff's expulsion from DU, Defendants denigrate Stotland's qualifications, misrepresenting the extent of her experience as being limited to having "worked with more than a dozen students accused of sexual misconduct under Title IX." Moving Br. at 12. As detailed in her report, Stotland has been an educational consultant for nearly 19 years, specializing in serving students in challenging circumstances, including those that have faced school discipline or criminal accusations, to achieve their educational and career goals. Declaration of Hanna Stotland dated February16, 2018 ("Stotland Decl."), Ex.1, Rpt. at 1. Since 2014, she has worked with more than two dozen students accused of sexual misconduct, a number that was in actuality, overly conservative, (*See* Stotland Decl. ¶ 7), and has advised at least two dozen additional families of students dealing with Title IX issues. *Id.*

Moreover, Stotland's profession is not limited to merely "crafting an optimal, honest set of essays for college admission," as claimed by Defendants. Moving Br. at 12. She has delivered presentations to various groups on both the admission of students in special circumstances and the challenges faced by students disciplined under Title IX. Stotland Decl., Ex.1, Rpt. at 1. Ex. 2, CV.

Further, Stotland continuously meets with admissions staff at various universities across the country, has visited with approximately three dozen campuses in person per year, and has visited well over 100 colleges and universities in approximately 25 U.S. States, Canada and six European countries to gain a better understanding as to how educational institutions assess applicants with special circumstances. Report, p. 2. Her clients include undergraduate students, as well as first-year and transfer applicants to law school, medical school, business school and Ph.D. programs. Stotland Decl., Ex. 1, Rpt. at 2.

Based on the foregoing, Stotland meets the qualification requirements dictated by FRE 702 and should be permitted to offer opinions concerning the impact of DU's findings, and the corresponding disciplinary mark of expulsion, on John Doe's future educational and career plans.[5]

## B. Stotland's Opinions are Relevant

Stotland's testimony will assist the jury in understanding the impact Defendants' finding of responsibility for sexual assault, and the associated sanction of expulsion, will have on Plaintiff's future educational and employment prospects. Specifically, Stotland will opine on the particular challenges faced by students disciplined under Title IX, the additional expenditures incurred by comparable law school applicants that do not have a disciplinary record, the likelihood of acceptance to various tiered schools, difficulties in gaining admission to a state bar, and the impact on John Doe's job opportunities in the legal field. For instance, when questioned about the potential barriers Plaintiff would face in applying to law school, Stotland testified as follows:

---

[5] To Plaintiff's knowledge, Stotland is the only educational consultant in the United States who specializes in assisting students who have been disciplined under Title IX and as such, possesses a particular expertise in this area. *See* Stotland Decl., Ex. 8, Rpt. at 1.

Q:      And what of those potential barriers?

A:      At schools where-basing this on my conversations with admissions officers around the country, there are some readers who see the Title IX record and say no. That's more or less the end of the evaluation of that candidate. That is especially likely at schools which are using the industry terms "reach" or "match" for the best candidate's credentials. In other words, if the school is choosing from among many candidates with similar numbers and one student has a Title IX record, I think that Title IX student is at a grave disadvantage relative to his GPA peers.

Davis Decl., Ex. 2, Stotland Tr. at 43:13-24. While acknowledging that Plaintiff's GPA performance and LSAT score would be relevant to his job prospects in the future, she specified that regardless of his GPA, "the Title IX finding of responsibility is a drag on wherever he's trying to get to." *Id.* at 51:11-13.

Stotland's opinions will educate the jury about the difficulties faced by students with a Title IX disciplinary issue on their record in general and to what extent, if any, DU's finding of responsibility and issuance of an expulsion will impact Plaintiff's future educational and employment goals.

## C. **Stotland's Opinions are Reliable**

Stotland's opinions are reliable, as they are supported by appropriate validation—specifically, her years of experience in the educational consulting industry, and her review of the factual record, including the discovery exchanged and Plaintiff's deposition testimony. Stotland Decl., Ex. 1, Rpt. at 2; *see also Estes Park*, 2017 WL 247772149 at *2. Defendants inaccurately characterize the opinions presented in Stotland's report as "purely speculative" (Moving Br. 12) and "entirely conjectural" (Moving Br. 13). Defendants misconstrue the crux of Stotland's presentation—her opinions do not attempt to predict whether Plaintiff will ultimately seek admission to law school, or a career in the legal field. Instead, Stotland professes on the law

14

school admissions process and the specific challenges he will face if he chooses to pursue this particular educational and career path, given the disciplinary mark on his record.[6]

Furthermore, contrary to Defendants' assertion, Stotland was not required to speak directly with Plaintiff concerning his intent to attend law school. Indeed, "[u]nlike an ordinary witness…an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993). Based on Plaintiff's expressed intention to attend law school in the future, Stotland's opinions concerning the challenges he will face are grounded in the particular facts of his case.

Assuming Plaintiff provides credible evidence concerning his intention to go to law school, Stotland will educate the jury regarding the admissions process and procedure and the difficulties Plaintiff will face, in comparison to his peers who have performed comparable academically but do not have a prior disciplinary issue. Though not based on any particular scientific methodology, Stotland's opinions are reliable based on her extensive experience in the educational admissions field over the past nearly two decades.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendants' motion to exclude expert testimony in its entirety, along with such other and further relief as the Court deems just and proper.

---

[6] In seeking to preclude Stotland's testimony on the grounds that her opinions are speculative, the argument advanced by Defendants is in actuality a claim that Plaintiff's damages are speculative. As all prospective damages could by their very nature be deemed speculative, this does not preclude Stotland from educating a jury of lay people on the law school admissions process and the impediments that may arise given Plaintiff's disciplinary record.

Dated: New York, New York
   February 19, 2018

        Respectfully Submitted,

        */s/ Tara J. Davis, Esq.*
        *[e-filing – February 19, 2018]*

        _____

        Andrew T. Miltenberg, Esq.
        Tara J. Davis, Esq.
        Nesenoff & Miltenberg, LLP
        363 7th Avenue, Fifth Floor
        New York, New York 10001
        212-736-4500
        amiltenberg@nmllplaw.com
        tdavis@nmllplaw.com

         -and-

        */s/ Michael J. Mirabella*
        *[e-filing – February 19, 2018]*

        _____

        Michael J. Mirabella, Esq.
        Michael Mirabella, P.C.
        1888 Sherman St. #200
        Denver, CO 80203
        720-538-0362(ph)
        mmirabella@mbellalaw.com

        *Attorneys for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

I certify that on the 19th day of February, 2018, I served a true and correct copy of the

forgoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE**

**EXPERT TESTIMONY** by filing through ECF, the Court's official electronic filing system,

which will provide notice to the following:

**CONTANGY, BROOKS, SMITH & PROPHETE, LLP**
**Jim Goh**
**LaLonnie Gray**
**600 17th Street, Suite 2700S**
**Denver, Colorado 80202**
**Telephone: 720-343-7570**
**Facsimile:  720-343-7571**
**jgoh@constangy.com**
**lgray@constanfy.com**

*Attorneys for Defendants*

/s/ Tara J. Davis
Tara J. Davis, Esq.